UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:

**AMAGANSETT FAMILY FARM, INC.,**
**AMAGANSETT COMMONS, LLC**
**OCEAN VINE, INC.**

        Debtor (s)

Hearing Date: TBD

Chapter 11
Case No. 11-73929 (AST)
Jointly Administered

**<u>MADISON REALTY CAPITAL, L.P.'S OBJECTION TO THE DEBTORS MOTION FOR EXTENSION OF EXCLUSIVE PERIODS</u>**

Hon. Alan S. Trust
United States Bankruptcy Judge

------------------------------------------------------------------------x

   MADISON REALTY CAPITAL, L.P. ("**Madison**"), a secured creditor of the above named consolidated Debtors and interested party to this Chapter 11 case, by and through its attorneys Kriss & Feuerstein LLP, hereby sets forth its Objection to the "Debtors' Motion for Extension of Exclusive Periods During Which Debtors May Propose and File Plans of Reorganization and Solicit Acceptances Thereof" (the "**Motion**") and states as follows:

### **BACKGROUND**

   1.  Debtor, Amagansett Commons, LLC ("**Commons**") is the owner of real property commonly known as 531 Montauk Highway, Amagansett, New York (the "**Commons Property**").

   2.  Debtor, Amagansett Family Farm, Inc. ("**Family Farm"**) is the owner of property commonly known as 561 Montauk Highway, Amagansett, New York (the "**Family Property"**).

1

3. Debtor, Ocean Vine, Inc. ("**Ocean Vine**" and together with Commons and Family Farm are collectively referred to herein as the "**Debtors**") is the owner of real property commonly known as 551 Montauk Highway, Amagansett, New York (the "**Ocean Property**", and together with the Family Property and the Commons Property are collectively referred to herein as the "**Property**") .

4. Madison is a secured creditor of the Debtors by virtue of mortgage loans in the principal amount of $20,720,000.00 (the "**First Loan**"), which is evidenced by an Amended and Restated Note (the "**First Note**") secured by, among other things, an Agreement of Spreader, Consolidation and Modification of Mortgage, dated June 29, 2007 (the "**First Mortgage**"), which encumbers the Property[1]. Pursuant to an Amended and Restated Note dated August 20, 2007, the Maturity Date defined in the First Note was extended to August 19, 2008.

5. Additionally, Madison is a secured creditor of Commons and Family Farm by virtue of a Building Loan Note (the "**Building Note**") in the principal amount of $4,705,000.00 (the "**Building Loan**"), secured by a Building Loan Mortgage and Security Agreement, dated August 20, 2007 (the "**Building Loan Mortgage**"), which encumbers the Family Property and the Commons Property[2].

6. Additionally, Madison is a secured creditor of Commons and Family Farm by virtue of a Project Loan Note ("**Project Note**"), in the principal amount of $587,000.00 (the "**Project Loan**" hereinafter together with the First Loan and the Building Loan, referred to as the

---

[1] In addition to encumbering the Property, the First Mortgage also previously encumbered the real properties commonly known 64300 Main Road, Southold, New York, 8595 Cox Lane, Cutchogue, New York, 136 Main Street, Amagansett, New York and 138 Bluff Road, Amagansett, New York which were released pursuant to the Forbearance Agreement (as defined herein).
[2] In addition to the Property, the Building Loan Mortgage previously encumbered the real property commonly known as 64300 Main Road, Southold, New York (collectively, the "**Building Loan Mortgage Property**").

"**Loans**" and the Project Note**,** together with the First Note and the Building Note, referred to hereinafter as the "**Notes**") which is secured by, among other things a Project Loan Mortgage and Security Agreement, dated August 20, 2007 (the "**Project Loan Mortgage**", and known herein together with the First Mortgage and the Building Loan Mortgage, as the "**Mortgages**"), which encumbers the Commons Property and the Family Property[3].

7. The Notes matured on August 19, 2008 (the "**Maturity Date**").

8. On the Maturity Date, the Debtors failed to pay the Loans in full as required by the terms and conditions thereof.

9. As a result, the Debtors entered into a series of forbearance agreements, including a Forbearance Agreement (the "**First Forbearance Agreement**"), Amendment to Forbearance Agreement and Deed-In-Lieu of Foreclosure Agreement ("**Forbearance Amendment**") and the Second Amendment to the Forbearance Agreement and Deed-In-Lieu of Foreclosure Agreement (the "**Second Forbearance Amendment**", and collectively with the First Forbearance Agreement and the Forbearance Amendment, the "**Forbearance Agreements"**) pursuant to which Madison extended the time to pay the Loans in full to June 1, 2011 (the "**Forbearance Expiration Date**" as such term is defined in the Second Forbearance Amendment).

10. One day prior to the Forbearance Expiration Date, May 31, 2011, each Debtor filed a voluntary petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court Eastern District of New York (the "**Petition**").

11. The cases were later administratively consolidated by Order of the court dated June 15, 2011.

---

[3] In addition to the Property, the Project Loan Mortgage previously encumbered the real property commonly known as 64300 Main Road, Southold, New York.

12. In early July 2011, Madison's counsel requested that the Debtors consent to a single asset real estate designation in order to establish the time frame within which the Debtors would be required to commence making adequate protection payments or file a Plan of Reorganization. In response to this request, the Debtors did not respond until mid-August, and when they did respond they would only consent to such a designation if they could avoid the consequences of 11 USC §362(d)(3).

13. The amount due to Madison in connection with the First Note as of September 12, 2011 was $14,930,403.93 with a per diem of $5,442.38; the amount due on the Building Loan Note was $2,262,289.26 with a per diem of $823.25 and the amount due on the Project Loan Note was $672,115.00 with a per diem of $244.58. Thus, the total due to Madison on account of the Loans was $17,864,808.19 (the "**Payoff Sum**") as of September 12, 2011.

14. On or about September 9, 2011, the Debtors filed a Motion to Determine the Value of Madison's secured claim (the "**Valuation Motion**") claiming that they are unable to propose a Plan of Reorganization until the value of Madison's *allowed* secured claim has been set by the Court. No hearing dates have been set in connection with the Valuation Motion.

15. In the Valuation Motion the Debtors contend that the Property is worth $5,670,000.00 based upon a purported appraisal prepared by the Town of East Hampton in connection with an alleged potential offer to purchase the Property[4]. See Docket # 23. Madison intends to object to the Valuation Motion as it has become apparent that the Debtors are not seeking a valuation in furtherance of a good faith effort to reorganize. To this end, Debtors assert that they intend to propose a Plan of Reorganization funded by insiders who will provide "new money" which will allow payment of Madison's *allowed* secured claim in full. Thus, it is

---

[4] The appraisal referred to by the Debtors was not annexed to the Valuation Motion.

apparent that the Debtors will seek to have the Court set the lowest possible value for the Property in an attempt to enable the Debtors to propose a Plan of Reorganization funded by insiders which significantly reduces the amount paid to Madison on account of the Loans.

16. On September 14, 2011, the Debtors filed the instant Motion seeking to extend 120 day period prescribed in 11 U.S.C. §§1121(b) and 1121(c)(2) (which expires on September 28, 2011) for 60 days **following the entry of a final order of the Court establishing the value of Madison's secured claim.** Thus, practically speaking, the Debtors seek to delay proposing a Plan of Reorganization until sometime in February 2012. Notably, the Debtors have not offered to make any adequate protection payments during this period.

17. On September 15, 2011, Madison filed an Omnibus Motion seeking relief from the automatic stay pursuant to 11 U.S.C. 362(d)(1) and (2) and for an Order designating the Debtors Property as "single asset real estate".

18. The Debtors' Operating Reports for the months of June and July both reflect the Debtors have no income and had less than $200.00 in their bank accounts.

19. It is further undisputed that since the filing of the Petition, on May 31, 2011, the Debtors have failed to make a single adequate protection payment or propose a Plan of Reorganization. According to the Debtors Schedule "F" of creditors holding unsecured non-priority claims totaling $1,901,644.00 at least the sum of $873,930.00 is due to insiders.

## **DISCUSSION**

20. The instant Motion should be denied as the extension requested is nothing more than a stalling tactic, which will unnecessarily delay the Debtors' obligation to make good faith progress towards a reorganization and ultimately make payments to Madison. While the Debtors

claim that they waited almost four months to file the Valuation Motion because they were in "settlement discussions" with Madison, this is simply untrue. The discussions that took place during that time were in furtherance of Madison's belief that the Debtors were the owners of single asset real estate and therefore required to commence making adequate protection payments or alternatively file a Plan of Reorganization. Those discussions fell through primarily because the Debtors would only consent to the single asset real estate designation if they could avoid the consequences of 11 U.S.C. 362(d)(4) and delay moving this case forward. Thus, it is truly unbelievable that the Debtors would point to those settlement discussions as the basis for the instant request to extend the exclusivity period.

21. The Motion should also be denied as it is in the best interest of all creditors if Madison is permitted to propose a competing plan of reorganization which would seek to sell the Property to repay the Debtors' creditors. Such a Plan of Reorganization would render the Valuation Motion moot, as a sale will garnish the market value of the Property and the proceeds of the sale would be available to pay Madison's claim. Moreover, this is beneficial to the "insiders" of the Debtors who wish to retain the Property, as they would be free to bid at such a sale.

22. As the Debtors' point out in paragraph 15 of the Motion, among the factors for the Court to consider in deciding whether to extend the period within which the Debtors may exclusively propose a plan include: (a) the size and complexity of the case; (b) the necessity for sufficient time to negotiate and prepare adequate information; (c) the existence of good-faith progress towards reorganization; and whether creditors will be prejudiced by the requested extension, citing, *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bank. S.D. Ga 2005). As discussed

below, the Debtors' Motion fails to put forth any specific facts which would demonstrate the Debtors have satisfied the aforementioned factors.

23. First, this is not a complex case. The Property is single asset real estate and in essence, this case involves a two party dispute between the Debtors and Madison. The Property is vacant land and the Debtors have no income. Thus, the Debtors can not establish that the size and complexity of this case warrants an extension of the exclusive period within which the Debtors can only file a Plan of Reorganization.

24. The Debtors have also failed to demonstrate that they need sufficient time to negotiate and prepare adequate information. To this end, the Debtors offer no details concerning what efforts they have made to obtain the value of the Property since May 31, 2011. Instead, the Debtors claim they need to understand the value of the Property as they "intend to propose a plan of reorganization that provides for the contribution of new value by the current equity owners, and the payment to Madison of the full amount of its allowed secured claim as determined by the Court." Motion, ¶18.

25. In reality, the Debtors seek the value of the Property in order to limit the amount of "new value" that these insiders intend to contribute. However, it is evident that the Debtors desire to allow insiders to only fund a Plan of Reorganization to the extent of Madison's allowed secured claim would not be fair or equitable. This issue was discussed in detail in the case of *In re Fur Creations by Varriale, Ltd,.* 188 B.R. 754 (Bkrtcy. S.D.N.Y.,1995), which the Court denied confirmation of a Plan finding that the Debtor had failed to satisfy the "new value exception" to the absolute priority rule in light of the fact that the Debtors were not the source of last resort with respect to funding a Plan.

26. Moreover, the Debtors desire to obtain an extension to file a Plan of Reorganization to 60 days after a determination of the Valuation Motion simply ignores the fact that Madison could elect to treat its entire claim as secured, pursuant to 11 U.S.C. §1111(b) and the Debtors would therefore be required to pay Madison's entire claim in full. Alternatively, to the extent that Madison's claim is partially unsecured, Madison would control the class of unsecured creditors and would certainly not vote in favor of a Plan that allowed insiders to recapitalize the Debtors at Madison's expense. Thus, the Debtors need for a hearing on their Valuation Motion is in furtherance of a self-serving attempt to unnecessarily delay this action.

27. At this juncture, the Debtors and Madison are at an impasse and the sole basis for the extension requested is the Debtors own delay in obtaining a value of the Property. Contrary to the Debtors representation, Madison was not engaged in discussions with the Debtors regarding the value of the Property as it was determined very early on in this case that Madison believed that the value of the Property was substantially higher than the Debtor claimed.

28. The Debtors have also not made good faith progress towards reorganization. The Debtors have failed to make a single post-petition payment to Madison. Moreover, the Debtors have virtually no cash in any of their accounts and no income to make adequate protection payments. In point of fact, other than moving to retain a consultant, the Debtors have taken no steps to move this case forward until September 9, 2011 when the Debtors filed the Valuation Motion.

29. Furthermore, the Debtors offer no explanation in the Motion as to the source of the insider funding they claim they will obtain to facilitate a plan of reorganization or how much funding is available. Moreover, upon information and belief, the insiders who will fund a Plan

of Reorganization are already guarantors of Madison's Loans. Thus, Madison would be in a worse position if those individuals funds were used to recapitalize the Debtors.

30. The Debtors vaguely allege that their progress includes efforts to "maintain and market the Properties to potential buyers." Motion, ¶20. However, the Debtors have not sought Court approval to retain a real estate broker. Moreover, the Debtors fail to identify any offers they received or specific marketing efforts they have made, further evidencing that this self-serving claim is illusory.

31. Finally, the Debtors vaguely claim that Madison will not be prejudiced since "an extension will allow the Debtors to continue working with its creditors to develop a consensual chapter 11 plan." Motion, ¶21. First, it is not subject to dispute that Madison is the sole creditor that the Debtor needs to negotiate with to develop a Plan of Reorganization. Second, the Debtors have made no effort to work with Madison at all. To this end, Madison's discussions with the Debtors have consistently been with respect to Madison's desire to move this case forward and have the Debtors' file a Plan of Reorganization and commence making adequate protection payments. In response, the Debtors have done nothing but attempt to avoid complying with the statutory deadlines. To this end, the Debtors own Operating Agreements clearly indicate that they are the owners of single asset real estate. Notwithstanding this fact, the Debtors failed to reflect that status on their respective Petitions to avoid being forced to make adequate protection payments. While Madison contacted the Debtors to resolve this in early July, it was not until mid-August that the Debtors responded to this request and only agreed to the designation on the condition that they not have to be bound to the 90 day deadline within which they would have to file a Plan of Reorganization or commence making adequate protection payments.

32. Additionally, since there is no equity in the Property and the Debtors cannot afford to make adequate protection payments, the Property is a burden to the estate that the Debtors cannot afford and therefore is not necessary to a Plan of Reorganization. Therefore, Madison should not be precluded any longer from proposing a competing Plan of Reorganization should it so choose.

## CONCLUSION

For the foregoing reasons, the Madison respectfully request that this Court deny the Debtors Motion in its entirety and grant such other and further relief as this Court deems just and proper.

Dated: September 23, 2011
  New York, New York

> KRISS & FEUERSTEIN LLP,
> *Attorneys for Madison Realty Capital, L.P.*
>
> By: s/ Jerold C. Feuerstein
>   Jerold C. Feuerstein, Esq. (JF9829)
>   360 Lexington Avenue, Suite 1200
>   New York, New York 10017
>   (212) 661-2900