UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                    Case No: 11-73929-AST
                                                                                Chapter 11
AMAGANSETT FAMILY FARM, INC., *et al.*,
                                                                                (Jointly Administered)
                                        Debtors.                     Case Nos.: 11-73928-AST and
                                                                                11-73930-AST
-----------------------------------------------------------X

## DECISION AND ORDER DENYING
## DEBTORS' EMERGENCY MOTION FOR RECONSIDERATION

Pending before the Court is the motion (the "Motion") [dkt item 42[1]] of the debtors, Amagansett Family Farm Inc., Amagansett Commons, LLC, and Ocean Vine, Inc., (the "Debtors"), seeking emergency reconsideration of the Court's determination that each of the Debtors is a "single asset real estate" ("SARE") debtor, as defined in 11 U.S.C. § 101(51B). For the reasons herein, the Motion is denied.

### Facts and Background

Debtors each filed their bankruptcy petitions on May 31, 2011. [dkt item 1] In the box on the official form for a voluntary bankruptcy petition labeled "Nature of Business," Debtors each checked "Other" and not "Single Asset Real Estate as defined under 11 U.S.C. § 101(51B)." On June 14, 2011, the Court issued an order granting Debtors' motion to administratively consolidate the three cases as related cases. [dkt item 16]

The Debtors each own one of three contiguous parcels of undeveloped real property, commonly referred to as 531, 551, and 561 Montauk Highway, Amagansett, New York (the "Property"). The Property serves as collateral for a first mortgage loan (the "Loan") held by

---

[1] For purposes of this decision, references to docket items are as "dkt," and are based upon the pleadings filed in the lead case of Amagansett Family Farm Inc., 11-73929-AST.

1

Madison Realty Capital, L.P. ("Madison"). The Loan is secured by mortgages creating liens against the Property.

On September 9, 2011, more than 90 days after the petitions were filed, Debtors filed a motion asking this Court to determine the amount of the Madison secured claim under Section 506 based on the value of the Property, and requested an evidentiary hearing thereon ("Valuation Motion"). [dkt item 23] The Debtors allege in their Valuation Motion that the Property is worth approximately $6 million, and that Madison's Loan has an unpaid balance of approximately $17 million. Valuation Motion at ¶¶ 13, 23.

On September 14, 2011, Debtors filed a motion to extend the exclusivity period under Section 1121, seeking an extension of time to solicit acceptances of a plan until the first business day that is 60 days following entry of a final order of the Court establishing the amount of Madison's secured claim (the "Exclusivity Motion"). [dkt item 24] As of the filing of the Exclusivity Motion, Debtors had not yet filed a plan.

On September 15, 2011, Madison filed an omnibus motion for relief from the automatic stay and for a declaration of the Court regarding a determination that each Debtor is a single asset real estate debtor (the "Madison Motion"). [dkt item 25]

On September 20, 2011, Debtors requested an emergency hearing on their Valuation Motion and Exclusivity Motion. The Court scheduled a telephonic status conference for September 26, 2011 (the "Hearing"), to discuss the pending motions and further scheduling in these cases.

At the September 26 Hearing, the issue was raised as to whether Debtors should be designated[2] as SARE debtors. Debtors indicated that they did not intend to oppose the SARE determination, but argued that they had some form of agreement with Madison regarding the date when that determination would take effect and/or when payments would have to commence for lift stay purposes under § 362(d)(3). Madison denied the existence of such an agreement. The Court determined that each of the Debtors meet the definition of SARE under § 101(51B) and orally ruled that the Debtors be determined to be SARE debtors, effective as of September 26, 2011.

Nearly a month later, on October 20, 2011, Debtors filed the instant Motion [dkt item 42], together with a proposed order to show cause, asking the Court to reconsider, on an emergency basis, this Court's September 26, 2011, determination that the Debtors are SARE debtors. The Motion does not challenge the propriety of this determination, but rather asks that the Court delay the effective date of the SARE ruling until the first business day that is 60 days after the Court's final determination as to the value of Debtors' Property, and asks that the Court stay its September 26, 2011 ruling. Motion at ¶ 6.

## Analysis of Debtors' Emergency Request for Reconsideration

Despite not citing to any statute or rule, Debtors' Motion should be considered a request for reconsideration under Rule 9023 of the Federal Rules of Bankruptcy Procedure ("FRBP"), which incorporates Rule 59 of the Federal Rules of Civil Procedure ("FRCP"). *See Woodard v. Hardenfelder*, 845 F. Supp. 960, 964-67 (E.D.N.Y. 1994) ("The Second Circuit has noted that 'most substantive motions brought within ten days of the entry of judgment are functionally

---

[2] The parties interchangeably use the term designation and determination in reference to SARE; the Bankruptcy Code uses "determines" in Section 362(d)(3), but in reference to a small business debtor, the Federal Rules of Bankruptcy Procedure use the term "designation." *See* Bankruptcy Rule 1020; *In re Display Group, Inc.,* 2010 Bankr. LEXIS 4144 (Bankr. E.D.N.Y. Nov. 16, 2010).

3

motions under Rule 59(e), regardless of their label or whether relief might also have been obtained under another provision.'") (citing *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1103 (2d Cir. 1990)); *see also In re Jamesway Corp.*, 203 B.R. 543, 545-46 (Bankr. S.D.N.Y. 1996). Accordingly, the Court will deem the Debtors' Motion to be one under FRCP 59(e) and FRBP 9023.

Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked" – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. *Rafter v. Liddle*, 288 Fed. Appx. 768, 769 (2d Cir. 2008) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Further, to the extent that facts stated by Debtors in their Motion are not in the original record, neither this Court nor any reviewing court on appeal need consider same. *Id.* Motions to reconsider under FRBP 9023, as motions to reconsider under FRCP 59, "are not vehicles for 'taking a second bite at the apple[.]'" *Id.* (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998)). Facts that are not in the record of the original hearing cannot be said to be facts that the court "overlooked." *Id*.

In their Motion, Debtors have pointed to no facts that were overlooked by this Court in determining Debtors are SARE debtors, nor do Debtors cite to any controlling contrary precedent. Thus, since the Court did not err in making the SARE determination, the Motion should be denied.

The Bankruptcy Code defines "single asset real estate" as:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 101(51B) (2006). The SARE status triggers specific relief from stay provisions under § 362(d)(3) of the Bankruptcy Code.

Section 362(d) generally provides that a creditor whose claim is secured by an interest in the debtor's real property can request that the automatic stay imposed under § 362(a) be terminated, annulled, modified, or conditioned after a hearing on notice, and that, in the appropriate circumstances, the court "shall" grant stay relief. 11 U.S.C. § 362(d). In the particular case of a SARE debtor, the court "shall" grant stay relief unless the debtor has either "filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time" or has "commenced monthly payments that . . . are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." § 362(d)(3). The debtor must either propose a plan or commence monthly payments within "90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later." *Id.*

Thus, generally, to avoid the granting of stay relief under § 362(d)(3), a debtor must either propose a realistic plan or commence monthly payments within 90 days after the entry of the order for relief; however, Congress provided relief from these specific timing mechanics; rather than the stay being lifted 90 days after the petition date, the 90 days can be extended to "such later date as the court may determine for cause," but only by an "order entered within that 90-day period;" further, if debtor's SARE status is not acknowledged by the debtor on the bankruptcy petition, the 90 days will be supplanted by a period of "30 days after the court determines that the debtor is" a SARE and therefore subject to Section 362(d)(3); finally,

5

however, the 30 days after determination period will lapse later than 90 days after the petition date if the SARE determination is not made until the 61st day of the case or later. *Id.*

In this case, because the SARE determination occurred more than 90 days after the petitions were filed, and because the Court determined at the hearing on September 26, 2011, that the Debtors met the definition of SARE under § 101(51B), relief from the stay "shall" be granted if by October 27, 2011, which is 31 days after September 26, 2011, Debtors have not either proposed a realistic plan or commenced monthly payments.

In an attempt to avoid this looming deadline, on October 20, 2011 – being 24 days after the Court made the SARE determination but nearly five months after the petition date – Debtors filed the instant Motion. With just seven days left to either propose a realistic plan or commence monthly payments, Debtors now move this Court to reconsider its September 26 ruling and delay the effects of § 362(d)(3) until "the first business date that is sixty (60) days following the Court's final determination as to the fair market value of the Debtors' real properties." Motion at ¶ 6. Debtors contend in their Motion that their statement at the September 26 Hearing that they did not intend to oppose SARE designation was "based on the Debtors' belief that the designation would not become effective before valuation had been determined, or, at the very least, before the return date of Madison's motion." Motion at ¶ 17. As support for this, Debtors annexed to their Motion as Exhibit A an unsigned, undated "Stipulation and Order"[3] that purports to determine that the Debtors are SARE debtors under § 101(51B) but to delay the effect of that determination for purposes of § 362(d) until 60 days after the Court makes the final determination on valuation.

---

[3] According to Debtors' Motion, the final draft stipulation was transmitted to Madison's counsel on August 31, 2011, but Madison never signed or returned the proposed stipulation. Motion at ¶ 16. Instead, Madison filed its omnibus motion for relief from the automatic stay and for a declaration of the court regarding the single asset real estate determination on September 15, 2011. [dkt item 25]

6

Debtors' arguments are simply misplaced. Valuation of a debtor's assets is irrelevant to the determination of whether a debtor's property satisfies the definition of "single asset real estate" under § 101(51B). There is nothing in §101(51B)'s definition of SARE that requires an analysis of the value of the Debtors' assets or the amount of Madison's secured claim under § 506(a). While Congress provided a debt cap in § 101(51D) for a court to designate an entity as a small business debtor,[4] the current Bankruptcy Code has no debt cap for SARE. In fact, a SARE debt cap was in effect prior to October 17, 2005, prior to which time a SARE determination was limited to a debtor with "a single property or project . . . having aggregate noncontingent, liquidated secured debts in an amount no more than $4,000,000." 11 U.S.C. § 101(51B) (amended 2005). By removing this debt cap through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) amendments, Congress made clear that the SARE determination was indifferent to the amount of debt owed by the debtor and/or the value of the subject property or project.

Further, nothing in the language of § 101(51B) or § 362(d)(3) requires or permits the Court to consider the Debtors' subjective intent based on an unsigned document prepared as part of negotiations in determining whether Debtors meet the statutory definition of single asset real

---

[4] The term "small business debtor" --

(A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $ 2,343,300 (excluding debts owed to 1 or more affiliates or insiders) for a case in which the United States trustee has not appointed under section 1102(a)(1) [11 U.S.C. § 1102(a)(1)] a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor; and

(B) does not include any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $ 2,343,300 (excluding debt owed to 1 or more affiliates or insiders).

11 U.S.C § 101(51D).

estate under § 101(51B), or in enforcing the 30-day deadline in § 362(d)(3). While the Court may consider whether to condition stay relief and the precise nature of the stay relief that "shall" be granted if Debtors fail to comply with their obligations under § 362(d)(3), the Court cannot now allow Debtors to relitigate their SARE status nor allow Debtors to escape the effects of the SARE determination. The language of § 362(d)(3) precludes this Court from extending the 90-day deadline. Any order extending the 90-day time period after which the stay "shall" be lifted must be "entered within that 90-day period," which runs from the date of entry of the order for relief. § 362(d)(3). Debtors filed their petitions on May 31, 2011. The 90 days ran on August 29, 2011, and Debtors made no request to extend the 90-day period prior to August 29, 2011. The Court lacks the statutory authority to now delay the effect of the SARE determination made on September 26, as there is no "for cause" authorization in the Code to not grant stay relief after expiry of the 30 days after the SARE determination is made for a debtor who fails to meet its § 362(d)(3) obligation.

Therefore, under the express language of § 362(d)(3), the Debtors' only option is, on or before October 26, 2011, to either propose a plan of reorganization "that has a reasonable possibility of being confirmed within a reasonable time" or commence monthly payments. The language of § 101(51B) and § 362(d)(3) are clear, and the Court's SARE determination made effective September 26, 2011 stands.

Finally, beyond seeking a remedy not authorized by the Bankruptcy Code, Debtors have created an emergency for themselves and the Court through their lack of diligence and lack of regard for the deadlines set forth in the Bankruptcy Code. Even if the express language of § 362(d)(3) did not prohibit the Court from extending the deadline for cause, an extension for cause is not warranted "when the cause for expedited hearing is one of the movant's own

making." *In re Schindler*, 2011 Bankr. LEXIS 1208, at *7 (Bankr. E.D.N.Y. Mar. 21, 2011) (quoting *In re Villareal*, 160 B.R. 786, 787 (Bankr. W.D. Tex. 1993)). Said otherwise:

> Rather than being the product of something that could not properly be prepared for, the current emergency seems to be prompted by nothing more than the approach of an impending deadline, which has been known for some time. This failure to plan ahead does not rise to the level of a genuine emergency justifying shortened notice or expedited relief. Any emergency is one of the debtor's own making.

*In re Fort Wayne Assocs.*, No. 97-10378, 1998 WL 928419, *1 (Bankr. N.D. Ind. Dec. 16, 1998).

Clearly, in this case, the emergency is of Debtors' own making. Based on Debtors' own motion, if they were not aware of their SARE status on the petition date,[5] certainly by August 11, 2011, Debtors were aware that they likely would be determined to be SARE debtors. Motion at ¶ 13-14. August 11, 2011, was within 90 days of the date when the order for relief was entered in this case. Therefore, Debtors had notice and abundant opportunity to seek an extension of the 90-day deadline for cause as provided in § 362(d)(3), and to moot the possible effect of § 362(d)(3) that occurs 30 days after the SARE determination, but Debtors chose not to do so. The fact that Debtors conducted negotiations to attempt to resolve a deadline imposed on them by Congress is certainly laudable; but seeking relief which the Court is not empowered to grant, and doing so at the last minute, are not.

---

[5] There is no good faith dispute as to the nature of each Debtor as falling within the statutory definition in § 101(51B).

Case 8-11-73929-ast    Doc 43    Filed 10/25/11    Entered 10/25/11 16:03:15

## **Decision**

Based on the foregoing, it is hereby:

    **ORDERED**, that the Motion and the emergency request for reconsideration are DENIED.



**Dated: October 25, 2011**
**Central Islip, New York**

    **Alan S. Trust**
**United States Bankruptcy Judge**